GOLDEN GATE MFG. CO. v. NEWARK FAUCET CO.

(Circuit Court of Appeals, Third Circuit. May 13, 1904.)

No. 44.

1. PATENTS—INVENTION—APPARATUS FOR RACKING LIQUIDS.
    The Savage patent, No. 537,939, for an apparatus for racking liquids, is void for lack of patentable invention, the apparatus shown being merely an adaptation of the devices of the prior Mussel patents, Nos. 331,251 and 333,081, to use in filling barrels or packages already equipped with permanent tap and vent valves, previously in use, which did not involve invention.

Appeal from the Circuit Court of the United States for the District of New Jersey.

For opinion below, see 124 Fed. 531.

Wm. B. Greeley and Wm. A. Redding, for appellant.
Edwin H. Brown, for appellee.

Before ACHESON and GRAY, Circuit Judges.

GRAY, Circuit Judge. This is an appeal from the decree of the court below, in a suit brought by complainant, as the owner of four patents, against the defendant, for infringement of the same. These patents are as follows: Patent No. 331,251, granted to C. Mussel, November 24, 1885, entitled "Apparatus for Filling Kegs with Beer"; patent No. 331,252, granted to C. Mussel, November 24, 1885, entitled "Method of Filling Vessels with Fermented Liquors"; patent No. 333,081, granted to C. Mussel, December 22, 1885, entitled "Apparatus for Filling Vessels with Fermented Liquors"; and patent No. 537,939, granted to W. C. Savage, April 23, 1895, entitled "Apparatus for Racking Liquids." The bill was dismissed in the court below, for want of infringement of the claims of the Savage patent and of the Mussel patents Nos. 331,251 and 333,081, when narrowly construed; the Mussel patent No. 331,252 being declared invalid, by reason of anticipation.

During the period of time between the final hearing and the entry of said decree, to wit, between November 19, 1901, and July 20, 1903, three of the four patents in suit, to wit, the three Mussel patents above referred to, expired, and in consequence thereof, the complainant limits this appeal to the remaining one of the four patents originally sued on, viz.: patent No. 537,939, issued April 23, 1895, to W. C. Savage.

The questions before this court, therefore, relate solely to the Savage patent No. 537,939, entitled "Apparatus for Racking Liquids." The defenses are, (1) that in view of the prior art, said letters patent are invalid for want of patentable novelty and invention; and (2) noninfringement by defendant.

It is to be noted that, though the explanation of the details of the patent, given in the specifications, is applied to the racking of beer, the title of the patent is, as we have stated, "Apparatus for Racking Liquids," and the opening statement is that the patentee has invented "certain new and useful improvements in apparatus for racking liquids," and all the claims refer to the racking of liquids generally, without specifying beer or other liquid. The conveyance of beer, or other liquids, from the large receptacles or reservoirs containing them, into the smaller packages, such as barrels or kegs or bottles, for distribution and consumption, is called racking, and the art in some form is as old as the necessity for the same. In the case of racking aerated or fermented liquids, the conditions are somewhat peculiar, owing to the opportunity during the process for the escape of portions of the gas contained in the liquid, which it is desirable to retain. This difficulty especially attended the simple transference of beer by a flexible tube from the storage cask to the keg or barrel through its open bung. Various devices existed prior to the "Savage" patent, for handling aerated waters and fermented liquids in this way. The account given by Savage in the specifications of his patent, of the practice in racking beer, as it existed at the date of his patent, is as follows:

"In the racking of beer as usually practiced in breweries the beer is led from the chip-cask through a suitable conducting pipe which terminates in a flexible hose which is inserted by the attendant into the barrel to be filled through the bunghole thereof. The hose is long enough to reach to the bottom

130 F.—8

of the barrel so that the beer shall not be caused to foam by falling in an uninclosed stream. Ordinarily such gas as is set free is allowed to escape through the bunghole around the hose, but it has been proposed also to return the gas to the chip cask through a return pipe which receives it from a device which fits snugly within the bunghole around the hose. It is impossible to close the ordinary filling pipe or hose at its very end and the consequence is that when the pipe is withdrawn from the barrel and it is transferred to another barrel, there is a considerable waste of beer due to the escape of that in the filling pipe between the cut-off valve and the extremity. If care is taken to drain the pipe before its removal so much time is consumed in racking as to offset the saving secured by the prevention of waste. Moreover, it is impossible with this apparatus to fill the barrel full without causing more or less waste from time to time by an overflow. I have sought to devise an apparatus whereby the racking shall be conducted rapidly and without waste while the barrels are filled uniformly full, and it is in this apparatus as hereinafter fully set forth, that my invention consists."

This account of the existing practice, does not, as we shall see, correctly set forth the state of the art into which the Savage patent made its entrance. The claims of the patent are as follows:

"(1) The combination with a supply vessel for liquid and a barrel or other package having a tap-valve and a vent-valve located at opposite points, and each being a feature of the barrel or package, and each having a gate to be opened or closed by connection therewith of a coupling-piece or other key, of a delivery pipe from said supply vessel, a coupling piece to connect said pipe to said tap-valve, a cut-off for said coupling-piece, a pipe to receive and conduct gas or air from the barrel, a coupling-piece to connect the gas pipe to said vent-valve and a cut-off valve for said last named coupling-piece, substantially as shown as described.

"(2) The combination with a supply vessel for liquid and a barrel or other package having a tap-valve and a vent-valve' located at opposite points and each being a feature of the barrel or package, and each having a gate to be opened or closed by connection therewith of a coupling-piece or other key, of a delivery pipe from said supply vessel, a coupling-piece to connect said pipe to said tap-valve, a cut-off for said coupling-piece, a pipe to return gas or air from the barrel to its source of supply, a coupling-piece to connect the return pipe to said vent-valve, and a cut-off valve for said last named coupling-piece, substantially as shown as described.

"(3) The combination with a supply vessel for liquid and a barrel or other package having a tap-valve and a vent-valve located at opposite points, and each being a feature of the barrel or package, and each having a gate to be opened or closed by connection therewith of a coupling-piece or other key, of a delivery pipe from said supply vessel, a coupling-piece to connect said pipe to said tap-valve, a cut-off valve for said coupling-piece, a pipe to return gas or air from the barrel to its source of supply, a coupling-piece to connect the return pipe to the vent-valve, a cut-off valve for said coupling-piece, and a trap tank interposed in said return pipe, substantially as shown and described.

"(4) The combination with a supply vessel for liquid, and a barrel or other package having a tap-valve and a vent-valve located at opposite points and each being a feature of the barrel or package and each having a gate to be opened or closed by connection therewith of a coupling-piece or other key, of a delivery pipe from said supply vessel, a coupling-piece to connect said pipe to said tap-valve, a cut-off valve for said coupling-piece, a 'pipe to return gas or air from the barrel to its source of supply, a coupling-piece to connect the return pipe, to the vent-valve, a cut-off valve for said coupling-piece, a trap tank interposed in said return pipe, a delivery pipe from said trap tank, a coupling-piece adapted for connection to the tap-valve of a barrel and a cut-off in said last named delivery pipe, substantially as shown and described."

The essential features of the beer racking device of the Savage patent, may be seen by a glance at the copy of the drawing accom-

Fig.1.

Fig.2.

panying the patent.   D is the chip-cask, or receptacle from which the beer is supplied to the barrel represented at A.   The beer is delivered through a conducting pipe, E, which terminates in a section of flexible hose, F.   The latter has, at its end, a racking faucet, G, with a cut-off, G', and H is the coupling piece or key, adapted to make connection with, and to open and close, the tap-valve, B.   The specifications explain:

"At or near the top of the chip-cask, D, or, it might be, in the air or gas tank from which air or gas under pressure is supplied, as hereinafter described, connection is made for a gas or air return pipe I, which returns to its source of supply the gas or air which is displaced through the vent-valve C of the barrel being filled.   Preferably the pipe I is connected through a cut-off I' to the upper end of the trap-tank J which is conveniently located near the point where the racking is carried on.   A pipe K forms the connection between the vent-valve C and the trap-tank J and has near its lower end an observation tube L.   For convenience in operation the pipe K terminates in a flexible section of hose M which has at its extremity a key or coupling-piece N which is adapted to make connection with and to open and close the vent-valve C and is also provided with a cut-off cock O.

"For a purpose presently to be described the trap-tank J is provided at its bottom with a coupling piece P and a cut-off cock Q.

"In the use of the apparatus described above, connection is made between the coupling-piece N and the vent valve C, and gas or air under pressure is allowed ·to flow into the barrel to be filled until there is established therein the pressure under which the beer should be racked.   The source of supply of the compressed air or gas may be the chip-cask itself, in case it is suitably located and a sufficient air or gas pressure is maintained therein above the surface of the beer, or it may be an independent vessel in which the air or gas is compressed, a pipe S provided with a cut-off S' being indicated as con-

nected to the trap-tank J for this purpose. The required pressure having been established in the barrel, connection is also made between the coupling piece H and the tap valve B, the barrel A being supported in such position that the vent-valve C shall be at the highest point and the tap-valve B at substantially the lowest point. The valves B and C are opened when connection is made with the coupling pieces and the cocks G and O are then opened to permit the flow of beer from the chip-cask into the barrel and the return of the gas or air from the barrel to its source of supply. The operation of filling the barrel is thus conducted under whatever pressure there may be in the chip-cask or in the vessel from which the air or gas is supplied, and no disengagement or loss of gas is suffered. As soon as the beer shows itself in the observation glass L the cocks G and O are closed and the coupling pieces H and N disconnected from the valves B and C, the latter being closed in the act of disconnection."

The learned judge of the court below, in considering the four patents in suit, to wit, the three Mussel patents and the Savage patent, determined that the method patent of Mussel was void, by reason of anticipation, and that the apparatus patents of Mussel, Nos. 331,251 and 333,081, and the patent in suit of Savage, No. 537,939, with which we are here concerned, must be subjected to a narrow construction, by reason of which "it is not shown that the elements set forth in the complainant's patents are embodied in the defendant's device; nor is it shown that the process set forth in complainant's patents is that under which the defendant's device operates." The patents to which the court below refer, as anticipating and rendering invalid the method patent of Mussel, No. 331,252, and in view of which the claims of all the other patents, including the Savage patent, should be so narrowed and limited in their scope, were the English patent, granted to William Russell, bearing date November 19, 1816, and the Matthews patents, one of them a method patent, No. 260,766, of July, 1882, and the other a device patent, No. 260,037, of the same year. We agree with the conclusions of the learned judge, as to the effect of these prior patents upon both the Mussel and the Savage patents. As the Mussel patents, however, have expired, and are no longer in suit, it will not be necessary to more than briefly refer to the discussion of the relation to them of these anticipating patents; especially, as we shall consider the important bearing that the Mussel patents themselves have upon the validity of the Savage patent, to which alone this appeal relates. The learned judge of the court below, in speaking of the Russell patent, says the English patent, granted to William Russell, in 1816, "is in the same art and class and for the same purposes and uses as the Mussel and Savage patents. It covers and contemplates substantially everything involved in the complainant's device patents in suit. * * * But in view of the fact that the same elements are for the same uses in each patent, it follows that whatever invention or novelty may be claimed for the Mussel patent, it must be limited strictly and narrowly to the device that may be found in the detailed construction of the various parts that go to make up the Mussel and Savage devices. * * * Further, we find set out in the Russell patent a conception of what seems to be an alleged novelty idea set out in the Mussel patents, for Russell has provided for opposite openings in the receptacle to be filled, suitable connections therefor that may admit to or lead from

said receptacle both beer and air. He has provided for, and gives evidence in the patent of having conceived, the uses which may be made of back pressure in the receptacle to be filled. He has further provided for a separate pipe leading to or from the similarly located openings in the receptacle."

In regard to the Matthews patent, No. 260,766, the court says an inspection of this patent shows that it describes "a method of bottling liquid or the like under pressure, by which constant and uniform pressure is maintained upon the liquid, as well when passing into the vessel to be filled, as when in the reservoir from which it is taken." He then quotes the one claim of the patent, as follows:

"The method herein described of charging the fountain with aerated beverages by connecting it first with the reservoir that contains only gas under pressure, and then with another reservoir containing water and gas under greater pressure, meanwhile leaving the connection with the first reservoir uninterrupted, so that the fountain will first be charged with gas and then with water under greater pressure than the gas, the water expelling surplus gas into the first reservoir whereupon communication with both reservoirs is closed, substantially as specified."

The contention of complainant is, that this process relates primarily, and was used chiefly, in charging soda-water fountains, and therefore could not be considered as an anticipation of the Mussel method patent, because of the alleged difference between the art of filling casks with beer and charging fountains with soda water. To this the answer of the court is, that "the difference between beer and soda water does not relate to and is not found in the different effects which back pressure will have upon them, in the filling of casks with beer or fountains with soda water; and further, that the United States Patent Office considers them not only as analogous, but classifies them practically as the same art." We agree with this conclusion of the court below. It will thus be seen that, prior to all the patents originally in suit, liquids containing gas or air had been conveyed under pressure from the receptacle thereof into smaller packages, through openings at the lowest point thereof, against a pressure of air or gas introduced by an opening at the highest point thereof, supplied by a pipe or conduit from a pressure reservoir, with the object of filling the cask without the loss in process of the gas or air contained in the liquid.

Let us now look at the devices of the Mussel patents themselves, in their relation to the Savage patent, with which we are dealing. The claims and specifications of the first of these patents, No. 331,251, are taken up largely with the description of the somewhat complicated device of framework, ropes and pulleys, for bringing the openings of the conduits in close contact and connection with the openings for the inflow of the liquid and the inflow and outflow of the gas or air. The fifth claim, however, describes the essential features of the device, as follows:

"A filling and supply head for beer, and a filling and supply head for air, both located to communicate at different points with the vessel to be filled, and both acting simultaneously to supply beer and air to a keg or other receptacle, substantially as and for the purpose specified."

This purpose is thus described in the specifications:

"The object of this invention is to supply beer to kegs, barrels, etc., for filling the same without the formation of foam in the keg or other receptacle as is now the case."

The method patent, No. 331,252, need not now be referred to, as it seeks a monopoly for the method incidentally described in the device patents, and was clearly anticipated, in the opinion of the court below, by the patents referred to. In this opinion, we have already expressed our concurrence.

The other device patent of Mussel, No. 333,081, is for an improved apparatus, for bringing the beer conduits and the air conduits into close connection with the openings in the bottom and top of the keg or barrel to be filled, and providing a relief reservoir, and for an automatic corking of the aperture in the barrel, when the same is filled and the connections are withdrawn. Claim 5, however, of the said patent, No. 331,251, already quoted, discloses the essential features of the devices common to both of these Mussel patents and the Savage patent.

It is not necessary now to further consider the place in the art of the Mussel patents, with reference to former devices, or the discussion of the same by the court below, to which we have already referred. It is sufficient to inquire to what extent the essential features in the claims of the Savage patent are covered by the prior Mussel patents. The essential features of the Mussel patents are well described by complainant's expert, when testifying in support of these patents (which were at that time in suit). In the course of his testimony, he said:

"For the foregoing reasons I do not find in the prior art the inventions of either of the Mussel patents in suit, but, on the contrary, after careful consideration of the deposition of Mr. Pell and the defendant's witnesses, I am confirmed in my opinion that these patents disclose for the first time the essential features of a successful back pressure beer racking system and the features which are fundamental to such a system at the present time,—namely, the employment of separate filling heads adjustable with respect to the package, and their location to communicate at different points, whereby it is made possible for the beer to enter the package at the bottom without foaming, and the pressure to enter at the top. With these features are combined in the Mussel patents Nos. 331,252 and 333,081 the use of a relief vessel, whereby the stoppage of the operation of racking by incidental foaming, such as might arise from abnormal conditions, is prevented, and the system rendered perfect in its entire operation. These features are nowhere found combined in the prior art, and they were, in my opinion, first given to the world in the three Mussel patents in suit."

This testimony, having for its purpose the support of the claim of priority of the Mussel patents, which at that time was a serious matter in dispute, from necessity admits, what we think due consideration will make apparent, namely, the identity of the essential features of the Mussel patents with those of the Savage patent. So also, complainant's counsel, in their brief, refer to the Mussel patents, "because they were necessarily involved more or less with the Savage patent in the depositions of the experts for the complainant and the defendant in the court below." They thus speak of them:

"In the first place, the Mussel patent, No. 331,251, is the first to disclose the idea of racking  *  *  *  through the tap valve while the displaced air or gas is permitted to escape through the vent-valve against a counter-pressure."

These statements of the expert witness and counsel for complainant, were not, it is true, intended to strengthen the argument in favor of the novelty and validity of the Savage patent. The contention was necessary in defense and support of the Mussel patents, which were involved in the litigation in the court below. Counsel, however, conclude their statement at this point, as follows:

"The Savage patent, No. 537,939, upon which this appeal is taken, discloses and covers, in a perfected form, that apparatus which, operating upon the general principle disclosed in the first Mussel patent, namely, that of racking through the tap-valve against a counter-pressure, supplies in combination those features which were necessary to overcome the difficulties incident to the use of the crude apparatus of Mussel, and is capable of meeting with the severe requirements of the art."

In another place, counsel say:

"In common with the apparatus of the Mussel patents, the Savage patent has flexible hose connections adjustable to the package, and, therefore, has the filling and supply heads of the Mussel patents. It has also in common with the apparatus of the Mussel patents, a source of supply for beer and a source of supply for air or gas, to which the air or gas is returned from the package, and a trap to prevent the clogging of the air pipe with foam. Having much in common, the apparatus of the Savage patent may be said to be built upon that of the Mussel patents, but it makes a vast step forward in simplicity, convenience and quickness of operation."

What this step forward was, is indicated by counsel a few lines further on in their brief:

"Savage did away with Mussel's system of weights and pulleys, and with the peculiar filling heads that required to be fitted by gaskets to the openings of the packages, and substituted a simple system of key valves [which require the packages to be fitted with special tap and vent-valves as a feature of the same].  *  *  *  No claim of novelty was made by Savage for any particular construction of the valves or gates, or of their operating keys, and indeed such construction is expressly admitted in his specifications to be old."

That is, he "did away with Mussel's system of weights and pulleys, and with the peculiar filling heads that required to be fitted with gaskets to the openings of the packages," by simply confining his racking operation to barrels and kegs furnished with tap and vent valves as a feature thereof, which barrels and kegs were already in use. Packages so furnished had, as a necessary complement, the "gate" to be opened or closed by connection therewith of a "coupling piece or other key," and were old at the date of the Savage patent.

Now let us see what is claimed in the patent that Savage contributed to the art, as illustrated in the Mussel patents. For this purpose, we again quote claim 1 of his patent:

"(1) The combination with a supply vessel for liquid and a barrel or other package having a tap-valve and a vent-valve located at opposite points, and each being a feature of the barrel or package and each having a gate to be opened or closed by connection therewith of a coupling-piece or other key, of a delivery pipe from said supply vessel, a coupling-piece to connect said pipe to said tap-valve, a cut-off for said coupling-piece, a pipe to receive and conduct gas or air from the barrel, a coupling-piece to connect the gas pipe to

said vent-valve and a cut-off valve for said last named coupling-piece, substantially as shown and described."

After what has been said in regard to the Mussel patents, we think it must be evident that there is nothing covered by this claim, that was not found in the devices of those patents, as heretofore described, except that the package to be filled is required to be fitted with a tap-valve and vent-valve, which will open or close by the connecting or disconnecting of the delivery tubes or hose connecting with the beer receptacle or air reservoir respectively. These tap-valves and vent-valves, as a feature of the package to be filled, were admitted to be old, the patentee saying in his specifications, "the valves B and C may be of any ordinary construction which will permit them to be closed or opened when connected with a faucet or filling tap or its equivalent, a valve of this character being described in detail in letters patent No. 449,513, granted to Mark Antony, March 31, 1891." It is in evidence that this particular tap-valve had been in general use as a fixture in, and feature of, beer barrels, the purpose being to furnish a convenient and easily adjusted means by which a barrel of beer could be tapped by the mere act of attaching the faucet through the aperture to the valve seat. It is not necessary to concern ourselves with the minute description of this mechanism, as set forth in the specifications of the patent in suit. It suffices to say, that its principal and useful feature is, that by merely entering the faucet into the aperture of the tap, a quarter turn of it, at the same time makes a tight connection with, and opens, the valve. The beer is then ready to be drawn, by merely opening the cock of the faucet. What Savage did, then, was to rack his beer into packages that were fitted into this admittedly old device of a tap-valve, instead of into packages with an open tap, to which the racking hose and tubes were adjusted by the somewhat cumbersome methods of the Mussel patents. A vent-valve constructed on the same principle as the tap-valve, was of course used for supplying the gas or air pressure, or for relieving the same. The only change that Savage was obliged to make, was the obvious one of so constructing both valves as to allow for an inflow as well as an outflow. A coupling-piece to connect the delivery pipe or hose with a tap-valve, with a cut-off therein, was of course the obvious and necessary complement to this use of kegs with tap and vent valves, to prevent the waste of liquid when uncoupling from the tap-valves. We do not suppose that any ingenuity of argument could ascribe invention to such a device. Any one who had used a garden hose with a stop cock situated in the nozzle, to shut off water without going to the source of supply, would have anticipated such an alleged invention. The essential features of the operation are those for which Mussel's apparatus was adapted, namely, the flowing of liquid into barrels at their lowest point, while gas or air was permitted to flow, first, into the barrels from their highest point, so that a back pressure should be established, and afterwards slowly let out of the barrels, in order that the liquids might enter.

The advantage claimed by Savage over Mussel, is only that in racking, he uses barrels that are furnished with permanent tap and vent valves, as described, instead of barrels with valveless openings.

Barrels with these tap-valves were already in use, and we think that Mussel is as free to use barrels so equipped now, as he was before the Savage patent. These tap-valves described in Savage's specifications, as already in use, involve the keys or couplings and faucets which were necessary to their operation. It did not involve invention to rack beer into a barrel furnished with a tap-valve. All that was required, was the complementary parts, such as the faucet to fit the valve, with its stop-cock and coupling-piece necessary, and, long before the Savage patent, in use, wherever barrels were furnished with such tap-valves.

That we have not mistaken the scope of the Savage patent, is, we think, made clear by the following statement of the complainant's expert witness. In the course of his testimony, he says:

"The fundamental principle upon which the invention is based, is that of racking the liquid under such continuously existing pressures, as shall be between the upper limit, at which no liquid or too little liquid would flow, and the lower limit below which, under the circumstances of temperature employed, foaming would occur. To this extent, I understand that it utilizes principles and apparatus disclosed by the Mussel patents, to which I have already referred, but it aims at the combination therewith of means whereby the connection and disconnection of the packages may be incidentally made with greater certainty, and without the use of auxiliary apparatus."

But this single aim of the Savage patent, to wit, the instantaneous connection and disconnection of the beer supply conduits, characterized the use of all barrels furnished with tap-valves of the general type described in Antony's patent, and referred to as already in use by Savage in his specifications. Given a barrel, with such a tap-valve as a feature thereof, and it was impossible to introduce a liquid into it or draw one from it, except by a connection thus incidentally made. At page 453 of the record, Savage practically admits this when he says:

"We were at that time selling valves to the brewers which they used for the purpose of tapping their kegs, that is to say, that with these valves, which they inserted in the barrels or kegs they were enabled to insert the faucet in the valve and by turning the faucet one-quarter to the right it opened the valve making a tight joint around the collar or key of the faucet and permitted the beer to flow through the valve and faucet. When the keg was empty by turning the faucet back one-quarter it closed the valve and the faucet was liberated."

That is, barrels, before the date of the Savage patent, had been equipped with tap-valves and vent-valves, combined with complementary parts, consisting of faucets and couplings, making it possible to open or close the valves by turning the faucets one quarter of a rotation. We cannot see that any invention was involved in adapting the general features of the Mussel racking device to barrels of this description. That such barrels were more easily and conveniently filled than those that were filled through an open tap, is due to the tap-valve with which they were furnished, and not to any invention disclosed in the Savage patent.

In so concluding, we do not lose sight of the well-established doctrine, that a combination in which all the elements are old, may yet produce a new and useful result and involve patentable invention. Here, however, no new result was achieved, other than what was

achieved by Mussel. Whatever advantage in the way of facility and expedition the Savage device had over that of the Mussel patent, was due, as we have said, to the fact that, while Mussel's device was adapted to the older kind of barrels, having taps and vents closed by bungs, the Savage device operated upon barrels whose taps were furnished with valves as a permanent feature, the necessary complementary parts of which produced the instantaneous coupling, which is the sole advantage claimed by Savage; barrels so furnished being in no wise the invention of Savage, but were already in existence at the date of his patent. In the language of the counsel of appellee:

"Savage had no problem to solve; no modification of any of the parts to make; no skill to provide, but merely had to modify the Mussel apparatus to suit the valved barrels which had come into use, and with only one possible way of doing it. In other words, the valved barrels could only be used with certain parts, and such parts had been already provided and had been used by brewers and by retailers of beer."

For these reasons, we think the decree of the court below, dismissing the bill, should be affirmed.